THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD C. SCHOENNEMAN, Defendant-Appellant.

Second District   No. 2—91—0129

Opinion filed November 6, 1992.

Dominick P. Dolci, of Dolci & Lauer, of Oakbrook Terrace, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Anthony J. Peracia, of Chicago (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Following a bench trial, defendant, Richard Schoenneman, was found guilty of doing business as a used car dealer without a license (Ill. Rev. Stat. 1987, ch. 95½, par. 5—102) and failure to keep records as required by the Illinois Secretary of State while operating as a used vehicle dealer (Ill. Rev. Stat. 1987, ch. 95½, par. 5—404(a)). Defendant appeals, contending the evidence was insufficient to prove his guilt beyond a reasonable doubt. We affirm.

Joe Rubin testified that he was president of Auburn Auto & Truck Parts at 1250 Ellis in Bensenville. Auburn Auto is an auto salvage business which purchases damaged vehicles, dismantles them, and sells the parts to body shops. In April or May 1989, Rubin leased some property at 1130 Irving Park Road in Bensenville to defendant. Defendant represented his company as "M&R Auto Brokers" (M&R) of Hammond, Indiana. Thereafter, Rubin did not deal personally with defendant for the purchase of any vehicles. At trial, Rubin identified Auburn Auto's "police record book" reflecting certain purchases from M&R. Rubin identified entries dated December 12, 1989, and January 24, 1990, reflecting 17 vehicles purchased by Auburn Auto from M&R. Rubin admitted that there was nothing in the records themselves to determine whether the purchases were made in Illinois or in Indiana. However, Rubin stated M&R would deliver the cars to Au-

burn Auto and Auburn Auto would pay and receive titles for each vehicle at Auburn Auto's office.

Leon Voorhees, manager of Auburn Auto, was responsible for buying vehicles and selling auto parts. He had known defendant for two years. Voorhees dealt with defendant mainly by telephone, but defendant would also visit Auburn Auto's office at various times. Defendant would generally call Voorhees and describe vehicles defendant thought Voorhees might purchase, although defendant would never divulge where he was calling from during these conversations. When Voorhees would indicate a certain vehicle he was interested in buying, defendant or his employee, Angelo Morales, would usually bring that vehicle to Voorhees. Voorhees would buy it on behalf of Auburn Auto, and defendant or Morales would give the title to Voorhees at that time. On the average, Voorhees purchased 10 to 12 cars per month from M&R in this manner. Voorhees identified defendant's signature on title histories of eight vehicles sold by M&R to Auburn Auto on December 12, 1989, and on title histories of 12 additional vehicles purchased by Auburn Auto from M&R early in 1990.

Angelo Morales testified that he worked as an auto repairman for defendant at M&R's Bensenville location. In 1989 and early in 1990, defendant had approximately 20 cars at the Bensenville location. Morales identified his signature on title histories reflecting M&R sales of six vehicles to Auburn Auto in January and February 1990 and testified that he delivered these cars and titles to Auburn Auto.

Lawrence Johnson, a police officer for the Illinois Secretary of State, testified that every licensed car dealer is required to keep a police ledger book, showing the year, make, model, serial number and other data for each vehicle available for sale. In July 1989, Johnson saw 20 to 30 cars during an inspection of M&R's Bensenville lot, some with "for sale" signs on them. In October 1989, Johnson spoke to defendant at the lot and told defendant he could not sell cars without a license. Defendant replied that he had an Indiana license. When Johnson stated that was insufficient, defendant excused himself, stating he was going to an auction. During another inspection in November 1989, defendant refused to let Johnson inspect a folder which defendant claimed contained titles to the cars on his Bensenville lot. Defendant admitted he did not have a police ledger book and also told Johnson that he was buying and selling cars in Illinois. At trial, Johnson identified 36 title histories of vehicle sales by M&R to Auburn Auto, which he had examined while inspecting Auburn Auto's police ledger book.

Various certified documents from the Illinois Secretary of State were admitted into evidence. These documents stated there were no records of a dealer license for either defendant or M&R Auto Brokers in Illinois for 1988, 1989, or 1990.

Defendant testified that he did not have an Illinois license to sell or repair cars, but rather defendant had a "wholesale" license in Indiana. Defendant admitted leasing the lot in Bensenville, storing vehicles there, and selling them to other dealers. For most sales, Auburn Auto would send someone to defendant's Indiana lot to pick up the cars. Other times, Auburn Auto's representative would travel to various auction sites to pick up cars purchased from M&R.

Although defendant stated he sold cars to Auburn Auto by telephone from M&R's office in Hammond, Indiana, defendant also stated he called Leon Voorhees from "some" auctions in Illinois at various times. In 1989, defendant bought some cars at an auction in Alsip, Illinois, and sold some of these cars to Auburn Auto. All checks from Auburn Auto were picked up at Auburn Auto's office by defendant or Morales.

The trial court found defendant guilty of "not having a license and doing business as a used car dealer, dealing with five or more vehicles" (Ill. Rev. Stat. 1987, ch. 95½, par. 5—102) and failure to keep records while operating as a used vehicle dealer (Ill. Rev. Stat. 1987, ch. 95½, par. 5—404(a)). Defendant was sentenced to one year's probation for the first offense and 24 months' probation for the second offense and, for each offense, was ordered to pay a $100 fine and court costs.

Defendant filed a "motion for new trial and arrest of judgment" contending, *inter alia*, the court was without jurisdiction since there was no evidence that the offenses were committed within the State of Illinois. The motion further asserted the State failed to prove five particular acts of selling or dealing used vehicles within the State of Illinois. The trial court denied defendant's motion and this appeal followed.

■ When a defendant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the crime charged. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) The fact finder's role as the weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. (*People v. Young* (1989), 128 Ill. 2d 1, 49.) The trier of

fact is in the best position to judge the credibility of the witnesses, to determine the weight to be accorded their testimony, and to resolve any conflicts in that testimony. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62.) On review, the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt of the defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307.

Defendant admits that he did not keep any records as required by the Illinois Secretary of State while operating as a used vehicle dealer under section 5—404(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 5—404(a)). Rather, defendant contends that the State failed to provide sufficient evidence that defendant was an "unlicensed used car dealer" under section 5—102 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 5—102), because the State failed to prove that defendant engaged in five or more sales involving used vehicles within the State of Illinois. According to defendant, because he did not engage in five or more sales within the State of Illinois, he was not a "used car dealer" and therefore was not required to keep business records.

The law requiring used vehicle dealers to be licensed states:

"No person, other than a licensed new vehicle dealer, shall engage in the business of selling or dealing in, on consignment or otherwise, 5 or more used vehicles of any make during the year *** or act as an intermediary, agent or broker for any licensed dealer or vehicle purchaser (other than as a salesperson) or represent or advertise that he is so engaged or intends to so engage in such business unless licensed to do so by the Secretary of State under the provisions of this Section." Ill. Rev. Stat. 1987, ch. 95½, par. 5—102(a).

Defendant contends that the evidence did not show that defendant engaged in the business of selling or dealing in five or more used vehicles. Defendant relies on section 2—106 of the Uniform Commercial Code—Sales (Code) (Ill. Rev. Stat. 1989, ch. 26, par. 2—106), which defines a sale as consisting of "the passing of title from the seller to the buyer for a price." Defendant next points to section 2—401(1) of the Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—401(1)) which states, in pertinent part: "Subject to these provisions and to the provisions of the Article on Secured Transactions ***, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." Further, defendant relies on section 2—301 of the Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—301), stating that the

obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract.

■ With certain exceptions, the laws which define our State's criminal jurisdiction limit such jurisdiction to offenses which are committed within the State:

"§1—5. State criminal jurisdiction. (a) A person is subject to prosecution in this State for an offense which he commits, while either within or without the State, by his own conduct or that of another for which he is legally accountable, if:

(1) The offense is committed either wholly or partly within the State; or

\* \* \*

(b) An offense is committed partly within this State, if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State." Ill. Rev. Stat. 1991, ch. 38, pars. 1—5(a), (b).

Defendant contends that a sale does not occur "partly" within the State of Illinois. Rather, according to defendant, the sale occurs at a specific time. Defendant relies on the telephone conversations between defendant and Leon Voorhees concerning the sales of vehicles to Auburn Auto. Defendant specifically contends that he sold vehicles to Auburn Auto by telephone from his office in Indiana and asserts that title to the vehicles passed from defendant to Voorhees (Auburn Auto) when those parties agreed to the purchase and sale of the vehicles during these telephone conversations. Consequently, defendant contends there was insufficient proof that five or more of these telephone "deals" occurred within the State of Illinois.

■ We disagree. Although the intent of the parties governs the passing of title under both the Illinois Vehicle Code and the Uniform Commercial Code, an explicit agreement regarding the passing of title is required under section 2—401 of the Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—401). We believe the evidence does not support defendant's contention that the parties explicitly agreed to transfer title, and therefore consummate the sales of the vehicles involved, over the telephone.

Joe Rubin testified that Auburn Auto would not purchase any cars without receiving title. Rubin further stated that he saw defendant or defendant's agent, Morales, deliver cars to Auburn Auto and that Auburn Auto would pay M&R by check upon receipt of the titles at Auburn Auto's office. Rubin's intention was to buy cars that were actually brought to his company's location, not to buy them sight unseen over the telephone. Moreover, Leon Voorhees stated that either

defendant or Morales would bring vehicles to Auburn Auto and at that point Voorhees would purchase vehicles on behalf of Auburn Auto. When such purchases were made, Morales would deliver title to Voorhees. Also, defendant's own employee, Morales, testified that he delivered at least six cars and their titles to Auburn Auto.

Additionally, Officer Johnson testified that in December 1989 and January 1990 he saw at least 20 vehicles on M&R's Bensenville lot and that a number of them had "for sale" signs on them. Moreover, defendant admitted to Johnson that he was selling used cars in Illinois.

Although defendant contends on appeal that all of the telephone calls were made from his office in Indiana, defendant testified that he called Voorhees from auctions in Illinois on several occasions and sold Auburn Auto "some" vehicles resulting from those telephone conversations. The remaining witnesses testified that defendant sold at least 6, and as many as 36, vehicles to Auburn Auto, and that such sales occurred in Illinois. The trial court was in the best position to judge the credibility of the witnesses, determine the weight of their testimony, and resolve any conflicting testimony. (*People v. Collins* (1985), 106 Ill. 2d 237, 261-62.) Faced with this evidence, the trial court rationally concluded that defendant conducted five or more sales within the State of Illinois. Consequently, defendant was bound under Illinois law to obtain a license and keep appropriate business records of all his Illinois transactions.

For these reasons, the judgment of the circuit court of Du Page County finding defendant guilty of operating as a used car dealer without a license and of failing to keep records while operating as a used car dealer is affirmed.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.