2024 IL App (2d) 240155-U
No. 2-24-0155
Order filed May 31, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

___

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-CF-2648 |
| | ) | |
| DIJON P. EDWARDS, | ) | Honorable |
| | ) | John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

___

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in continuing defendant's detention hearing where defendant requested the continuance and waived any timeliness objection. Nor did the trial court err in detaining defendant where the evidence supported that defendant fatally shot the victim and that defendant had a criminal history that included crimes of violence and demonstrated a disregard for court-imposed conditions. Therefore, we affirm.

¶ 2    Defendant, Dijon P. Edwards, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On December 7, 2023, defendant was arrested and charged by complaint with two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2022)), one count of armed robbery (*id.* § 18-2(a)(3)), and two counts of unlawful possession of a weapon by a convicted felon (*id.* § 24-1.1(a)). The charges stemmed from defendant's alleged shooting of Dontrell Cortez with a handgun and his taking of property (a bag and cellphone) from the person of Cortez.

¶ 5      Defendant initially appeared before the court on January 11, 2024, and the State filed its verified petition to deny pretrial release that same day. The court appointed a public defender to represent defendant. Defense counsel acknowledged receipt of the verified petition, answering that she had reviewed it with defendant. The court asked the State if it was ready to proceed on its petition, and it answered yes. The court then asked defense counsel, and she answered no and requested a hearing on January 19, 2024. The court set defendant's hearing for January 19.

¶ 6      At the January 19 hearing, which was before a different trial judge, a different assistant public defender represented defendant. The trial court initially stated that it was setting the case for preliminary hearing. Defense counsel responded, "Actually, Judge, we would be setting this for detention hearing I believe on January 31st in the afternoon." The State confirmed this was correct.

¶ 7      The trial court asked the parties if there was a "time issue" with respect to the State's petition to detain, and "[i]f there is, you waive it?" Defense counsel responded that defendant waived any time issue. The court set the detention hearing for January 31. The written order from January 19, 2024, stated that defendant had waived his presence at the hearing and that "Defendant

waives all time issues as related to the People's Verified Petition to Deny Defendant Pretrial Release."

¶ 8    The record does not contain a report of proceedings for January 31. Instead, the court reporter filed an affidavit stating that a February 1, 2024, order was entered showing this case was continued to February 14 but that the case was never called for the record and thus there was no transcript to produce. The common law record does not contain a written order from January 31 or February 1, 2024.

¶ 9    The State's verified petition was heard on February 14, 2024, and the State admitted two exhibits at the hearing: defendant's Cook County fugitive warrant for the offenses of burglary and probation violation committed in Wisconsin, and the State's factual synopsis. The synopsis provided as follows. On October 20, 2023, officers with the Elgin Police Department responded to a shooting at 1245 Fleetwood Drive in Elgin. At the scene, officers found the victim, Dontrell Cortez, shot and deceased on the second floor. Officers recovered a 10-millimeter casing but did not recover any property from Cortez's body. A witness reported hearing gunfire at the building. After hearing the shooting, the witness observed a pair of black males exit the building. One was carrying a grocery bag.

¶ 10    Officers reviewed video surveillance footage from around the building and observed two subjects in the footage matching the witness's description of the two black males.

¶ 11    Officers also reviewed nearby business video surveillance footage to view Cortez prior to the shooting. Video footage showed Cortez arriving at the Elgin Shopping Mall that day around 5 p.m. He was carrying a green drawstring bag and a white plastic bag, which appeared to hold something. Officers further observed video showing defendant and Hayes arriving at the mall, along with two other persons. Defendant and Hayes exited the mall with Cortez, and defendant

was holding a white cell phone box. Footage from another location showed that Cortez had a white cell phone box inside of his green bag.

¶ 12 Around 6:16 p.m., defendant was seen on another video at 1245 Fleetwood Drive, entering an apartment on the second floor. He was seen exiting the apartment two minutes later, and the video showed him concealing an unknown item inside his jacket. At 6:19 p.m., video showed defendant walking up the north stairwell, where Cortez and others were located. Defendant returned to the second-floor apartment around 6:20 p.m. At that same time, footage showed the witness who reported seeing subjects matching the description of defendant and Hayes leaving the building, consistent with her account to police.

¶ 13 The 911 call regarding a shooting victim was made at about 6:23 p.m. At that time, video showed defendant and Hayes where the witness had placed them outside of the apartment building. Footage obtained from the Grumpy Goat Tavern, located inside a nearby golf course clubhouse, showed defendant and Hayes emerging from a wooded area south of Fleetwood Drive and walking into the clubhouse at around 6:27 p.m. Hayes was holding two white cell phone boxes. Defendant and Hayes changed their clothing inside the Grumpy Goat restroom, and they left the establishment around 6:45 p.m. in a red SUV. Officers later spoke to the owner of the SUV, who said that defendant had called him that night to pick him up.

¶ 14 Hayes spoke with officers and reported that he, defendant, and Cortez returned from the mall to the Fleetwood Drive apartment building. Hayes observed defendant enter apartment 203 "possibly to get some weed" to sell to Cortez. Thereafter, Hayes saw defendant return to the stairwell where Cortez was by himself at the bottom of the stairs, and Hayes believed a drug deal was taking place. A minute later, Hayes heard a gun fire. Hayes then observed defendant holding a small black firearm consistent with a 10-millimeter handgun. Defendant pointed the handgun at

Hayes and told him to come with him, and Hayes followed. As Hayes walked down the stairs, he saw Cortez walking up the stairs. Defendant told Hayes to grab Cortez's green and white bag, and then they left the building.

¶ 15    Cortez was found several feet away from the top of the stairs on the second-floor hallway, consistent with where Hayes reported last seeing him walking up the stairs.

¶ 16    Hayes further reported that he followed defendant into the woods, where defendant pulled out several Android cell phone boxes and gave them to Hayes to hold. Defendant then attempted to conceal his firearm by some trees before he and Hayes proceeded to the Grumpy Goat.

¶ 17    The State further argued that defendant had a history of criminality in Wisconsin, where defendant was a resident. His history included three burglary convictions, the most recent in 2019; a 2016 conviction of felony intimidation of a victim with misdemeanor domestic battery; a 2017 conviction of resisting a peace officer; a 2019 conviction of possession of a firearm by a felon; a 2019 conviction of bail jumping; and a 2020 felony theft conviction for which defendant was on probation at the time of the instant alleged offense.

¶ 18    Defense counsel proffered the following at the hearing. Defendant was 25 years old and, if released, had a local address in Chicago suitable for house arrest. Defendant had family ties in the area—his sister and extended family lived in Illinois. Defendant's sister confirmed that she would be able to take him to future court dates.

¶ 19    Defense counsel continued that defendant had a seizure disorder, which required prescription medication to manage, but since his detention, he had not received his proper medication and had experienced two seizures. Due to his seizure disorder, defendant required placement on a bottom sleeping bunk. Due to a lack of bottom bunks available at the jail, defendant

had to be placed in isolation, which had affected his mental health. Further, defendant had a hearing tube and hearing loss in his left ear.

¶ 20    The trial court granted the State's petition to detain. It found the proof was evident and the presumption great that defendant committed a number of detainable offenses, noting that there were witnesses to "the significant part of the offenses alleged in this matter." The trial court found defendant posed a danger to the community, citing his "significant criminal history" and that he was currently on probation and had a fugitive warrant out for his arrest. The trial court also found no combination of conditions could mitigate defendant's real and present threat to the community.

¶ 21    In the trial court's written order, it further explained its order. As to its finding that defendant committed a detainable offense, the court specifically noted that witnesses had observed defendant with a firearm and that a witness had identified defendant as the shooter. Regarding defendant's dangerousness, the court found that, in addition to defendant's criminal history, defendant had armed himself and apparently committed the shooting without provocation in the course of an armed robbery. Last, as to conditions, the court explained that defendant had been on probation previously and was on probation currently, but probation conditions had not hampered defendant's continued criminality.

¶ 22    Defendant timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24    In defendant's notice of appeal, he raised three grounds for relief: (1) the State failed to prove that he committed the offenses charged; (2) the State failed to prove defendant's dangerousness; and (3) the State failed to prove that no conditions could mitigate defendant's dangerousness, including electronic home monitoring.

¶ 25    Defendant filed a memorandum in support of his appeal. Therein, he developed argument on the three issues raised in the notice of appeal and additionally argued that the trial court violated section 6.1(c)(2) of the Code (725 ILCS 5/6.1(c)(2) (West 2022)) by failing to hold a hearing on the State's petition to detain within 48 hours of defendant's initial appearance. Defendant argues that the plain language of section 6.1(c)(2) required a hearing on the State's petition within 48 hours even when the court granted a continuance at his initial appearance. He acknowledges that the issue of timeliness was not raised in the notice of appeal (nor was it objected to before the trial court), but he argues that the issue is reviewable under the doctrine of plain error. In support of his position, defendant cites *People v. McCarthy-Nelson*, 2024 IL App (4th) 231582-U.

¶ 26    We reject defendant's timeliness argument. The first step in a plain-error analysis is to determine whether a clear and obvious error occurred (*People v. Henderson*, 2017 IL App (3d) 150550, ¶ 37), and no clear and obvious error occurred because defendant clearly waived the 48-hour window for his detention hearing. Although defendant's January 31, 2024, hearing was continued without any explanation in the record, defendant had already twice requested to continue his detention hearing (on both January 11 and January 19, 2024) and had explicitly waived any timeliness issues. Nothing in the record shows that he objected to a third continuation of his detention hearing from January 31 to February 14, 2024, and it is defendant's duty to provide a sufficient record on appeal. *People v. Johnson*, 285 Ill. App. 3d 307, 308 (1996) ("The appellant has the duty to supply a sufficient record for review, and any doubts arising from the incompleteness of the record will be resolved against the appellant.").

¶ 27    Importantly, defendant was detained when he waived his right to a timely hearing on the State's petition and remained detained thereafter, meaning that defendant was the party who stood to benefit from section 6.1(c)(2)'s 48-hour timeframe. See 725 ILCS 5/110-6.1(c)(2) (West 2022)

("[T]he Court retains the discretion to detain or release the defendant in the time between the filing of the petition and the hearing."). Both statutory and constitutional rights may be waived as long as the waiver is made knowingly and voluntarily. *People v. Reid*, 2014 IL App (3d) 130296, ¶ 11. As section 110-6.1 functions primarily to limit the denial of a defendant's pretrial release, we see no issue with a detained defendant waiving at least some of section 110-6.1's limitations, such as a hearing on the State's petition to detain within 48 hours. To hold otherwise would be to disallow a detained defendant the choice of continued prehearing detention in order to prepare for the detention hearing and have a better chance at pretrial release.

¶ 28   We also find no merit in defendant's argument that his waiver was ineffective simply because it was made through counsel. Even with constitutional rights, only five decisions ultimately belong to a criminal defendant, such as how to plead and whether to waive a jury trial; all other decisions are within the purview of counsel. *People v. Phillips*, 217 Ill. 2d 270, 281 (2005). Here, defense counsel was not ready to immediately proceed on the State's petition and requested more time, which was reasonable in light of the defense's eventual proffer that included confirmation that defendant had relatives with whom he could reside in Illinois and a sister who would drive him to court appearances—a proffer that tended to show that defendant, a Wisconsin resident, could potentially be released in Illinois.

¶ 29   Moreover, this case is readily distinguishable from defendant's cited case law, *McCarthy-Nelson*, 2024 IL App (4th) 231582-U, where *the State* requested a continuance and where no waiver issue was raised.

¶ 30   Last, even if the continuation of defendant's detention hearing amounted to error, it would have amounted to invited error because defendant seeks to challenge on appeal the same continuation he requested below. See *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 24 (the doctrine

of invited error "provides that a party may not request the court to proceed in one manner and then argue on appeal that the requested action was error").

¶ 31    Turning to defendant's arguments on the merits, he first contends that neither the proof was evident nor the presumption great that he committed a detainable offense because Hayes, the only witness to place defendant near the scene of the shooting, "had a strong motivation to implicate [defendant] in order to avoid prosecution." Second, as to the real and present threat defendant poses, he argues that the majority of his criminal history consisted of nonviolent offenses, and that the State failed to present evidence beyond the current allegations that defendant was a violent individual. Third, he argues that the State failed to present evidence that defendant had ever violated electronic monitoring or a similar condition in the past. He also argues that the less restrictive condition of ordering him to surrender any firearms and not possess firearms would have been sufficient to mitigate any threat he would pose on release.

¶ 32    Pretrial release is governed by article 110 of the Code. 725 ILCS 5/110-1 *et seq.* (West 2022). Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a), 110-6.1. Here, defendant was charged with a qualifying offense. See *id.* § 110-6.1(a)(1.5) (first-degree murder).

¶ 33    To deny a defendant pretrial release, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great that defendant committed a detainable offense (*id.* § 110-6.1(e)(1)); (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). We review whether the trial court's findings were against the

manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 34    We reject defendant's arguments. First, Hayes's statements to the police, along with the other evidence in the factual synopsis, including copious references to video footage of defendant, Cortez, and witnesses from October 20, 2023, provided sufficient evidence that defendant shot Cortez. Defendant challenges Hayes's credibility by suggesting a motivation to lie, but the trial court's findings are entitled to considerable deference, and given that Hayes's statements were consistent with the rest of synopsis—including where Cortez's body was found, where defendant was, and who he was with at different times that day—it was reasonable for the trial court to believe Hayes's statements implicating defendant as the shooter. Even a conviction may be upheld by the testimony of a single witness contradicted by a defendant, so long as the witness is positive and credible. See *People v. Garza*, 298 Ill. App. 3d 452, 458 (1998).

¶ 35    Next, as to the real and present threat defendant poses, he is charged with a crime of violence involving a firearm (725 ILCS 5/110-6.1(g)(1) (West 2022)), he has a criminal history that includes intimidation of a victim, domestic battery, and resisting a peace officer, in addition to multiple burglaries (*id.* § 110-6.1(g)(2)), he was known to possess or have access to weapons (*id.* § 110-6.1(g)(7)), and he was on probation at the time of the alleged offense (*id.* § 110-6.1(g)(8)). As the evidence supported multiple dangerousness factors in conjunction with the charge of first-degree murder, the trial court did not err in finding that defendant posed a real and present threat to the community.

¶ 36    Last, as to conditions of release, the trial court reasonably concluded that defendant's criminal history, including his actions on probation, showed a lack of respect for court-imposed conditions. Defendant has been convicted of possessing a firearm as a felon, demonstrating that an order to not possess firearms is unlikely to mitigate the threat he poses to the community. Defendant is now accused of shooting a man in an apartment building, further demonstrating that limiting defendant to a residence with electronic home monitoring is no guarantee he would not harm someone around him. In short, the trial court reasonably concluded that no conditions would sufficiently mitigate the threat that defendant may gravely harm another on release.

¶ 37                             III. CONCLUSION

¶ 38    For these reasons, the trial court did not err in denying defendant's pretrial release, and we affirm the order of the Kane County circuit court.

¶ 39    Affirmed.