THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DEBBIE BLOMMAERT, Defendant-Appellant.

Third District No. 3—91—0967

Opinion filed November 30, 1992.

Frederick F. Cohn, of Chicago, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Debbie Blommaert was convicted of murdering her 10-month-old adopted infant. This court affirmed on direct appeal. (*People v. Blommaert* (1989), 184 Ill. App. 3d 1065, 541 N.E.2d 144.) She now appeals from the denial of her petition for post-conviction relief, which alleged ineffective assistance of counsel. We find that defendant was denied her constitutional right to effective assistance of counsel. Accordingly, we reverse her conviction and remand for a new trial.

The facts adduced at trial are fully laid out in this court's prior opinion. In a nutshell, the evidence showed that the infant died from blunt trauma to the head. Defendant claimed that the injury occurred when the infant fell down and struck her head on the floor. There was conflicting expert medical testimony as to whether such a fall could have caused the injury. There was also evidence that the child had received bruises on prior occasions. A jury found defendant guilty of first-degree murder and she was sentenced to 20 years' imprisonment.

Defendant then filed a post-conviction petition, alleging that she had been denied effective assistance of counsel. Blommaert's first claim is that trial counsel was ineffective for failing to investigate evidence which might have raised a reasonable doubt as to her guilt. In particular, defendant argues that her attorney failed to investigate medical evidence which purports to show that the victim's four-year-old sibling, Justin, could have been the one who caused the fatal injuries.

Defendant's second assignment of error is that her attorney was incompetent for advising her to reject an offer to plead guilty to involuntary manslaughter. Blommaert contends that trial counsel grossly misinformed her as to the potential penalties she faced if convicted of murder and also wrongly advised her that she would permanently lose parental rights to the surviving child if she pled guilty.

The circuit court held a hearing on defendant's petition. Much of the evidence presented there focused on defendant's theory that Justin could have been responsible for the victim's injuries.

Dr. John Kenney, a forensic odontologist, testified that he had examined the victim's body at the request of the Cook County medical examiner's office prior to trial. His review revealed several bite marks which were caused by Justin. Dr. Kenney authored a report to that effect. The report was available to defense counsel, but no one from the defense contacted Dr. Kenney.

At the post-conviction hearing, Dr. Kenney testified that such bites indicate that Justin bit the infant aggressively and violently. He further testified that there is medical evidence which shows that young siblings may cause the death of infants.

Dr. Mitra Kalelkar, the medical examiner who performed the autopsy, testified that she was aware of the studies regarding violence among siblings and did not dispute their accuracy. Dr. Kalelkar had testified at trial but had not been interviewed prior to the trial by defense counsel.

Defendant's trial counsel, Joseph R. Mazzone, also testified at the hearing. He stated that his decision not to pursue any investigation into the possibility that Justin killed the infant was based upon his discussions with family members and his discussions with defendant's medical expert witness.

The second basis which Blommaert asserted in support of her claim of ineffective assistance of counsel was that Mazzone had wrongly advised her to reject a plea offer and prevented her from making an informed decision on the offer because she was given incorrect information by her counsel. During the trial, the State offered defendant the opportunity to plead guilty to involuntary manslaughter. Blommaert contends that Mazzone informed her that if she were convicted of murder, she would probably only serve two to three years. Blommaert also alleges that Mazzone told her that she would permanently lose parental rights to Justin if she pled guilty.

In support of this contention, Blommaert introduced a phone conversation between her husband Ron and Mazzone, which Ron Blommaert had surreptitiously tape recorded. During that conversation, Mazzone did indicate that he thought defendant would be up for parole in one year and could be out in two to three years. This conversation took place after the conviction but before the hearing on the post-conviction petition.

After hearing all the evidence, the trial court denied defendant's request for post-conviction relief. Defendant now appeals.

The first issue is whether attorney Mazzone rendered ineffective assistance by failing to investigate the possibility that Justin caused the death of the infant.

At a hearing under the Post-Conviction Act (Ill. Rev. Stat. 1991, ch. 38, par. 122—1 *et seq.*), the burden is on the defendant to establish a substantial deprivation of constitutional rights, and this court cannot reverse the denial of a petition for post-conviction relief unless it is manifestly erroneous. *People v. Griffin* (1985), 109 Ill. 2d 293, 487 N.E.2d 599.

■ The defendant must satisfy a two-prong test in order to establish ineffective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Second, the defendant must show that the deficient performance prejudiced the defense, *i.e.*, that there is a reasonable probability that the outcome of the trial would have been different but for counsel's ineffective representation. The defendant must overcome a strong presumption that counsel's conduct fell within a wide range of acceptable behavior. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

Defendant contends that Mazzone's failure to investigate the bite-mark evidence amounted to deficient representation. She argues that evidence that Justin could have killed the infant would have raised a reasonable doubt at trial as to her guilt.

■ The testimony presented at the post-conviction hearing reveals that Mazzone was aware of the bite-mark evidence. Mazzone stated that his decision not to pursue any further investigation into that matter was based on his discussion with defendant, her family and her friends.

A reviewing court must evaluate counsel's performance from counsel's perspective at the time. (*People v. Wright* (1992), 149 Ill. 2d 36, 594 N.E.2d 276.) In determining whether counsel conducted adequate pretrial investigation, the Supreme Court noted that

"strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy mea-

sure of deference to counsel's judgments." *Strickland,* 466 U.S. at 690-91, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

Under this standard, trial counsel's decisions were not unreasonable and did not prevent Blommaert from receiving a fair trial. Mazzone was able to present a zealous defense and was able to "make the adversarial process work in the particular case." (*Strickland,* 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) Defendant has not met her burden of showing that counsel's conduct was deficient and that she was prejudiced by that deficiency. The trial court's ruling on this issue is not against the manifest weight of the evidence.

The second issue on appeal is whether defendant was denied effective assistance based on Mazzone's advice to reject the plea bargain. Defendant was offered the opportunity to plead guilty to involuntary manslaughter but rejected it on advice of counsel. This offer came during the State's case in chief just prior to Dr. Kalelkar's testimony. Blommaert also argues that defense counsel should have tendered an involuntary manslaughter jury instruction at trial.

Initially, Blommaert alleges that Mazzone grossly misinformed her as to the potential penalty for a murder conviction. Blommaert, her husband, and her mother all testified that Mazzone told them that if defendant was convicted, she would be eligible for parole within one year and that she could be released in two to three years. Under applicable law, the minimum sentence was actually 20 years, with a possibility of release after 10 years of day-for-day credit for good behavior. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—1(a)(1), 1003—6—3.) Blommaert also alleges that Mazzone wrongly informed her that she would be eligible for work-release programs while in prison. Under Department of Corrections policies, those programs are not available to persons convicted of first-degree murder. (See 20 Ill. Adm. Code §455.10 *et seq.* (1992).) Blommaert avers that, had she known the actual sentence for first-degree murder, she would have accepted the State's offer to plead guilty to involuntary manslaughter, an offense which is probationable.

On a related note, defendant argues that Mazzone was ineffective for failing to tender an involuntary manslaughter instruction at trial. At the post-conviction hearing, Mazzone testified that it was defendant's decision not to tender the lesser-offense instruction. He claims that she wanted to "roll-the-dice" for either acquittal or conviction, without the possibility of a compromise verdict.

Blommaert also alleges that Mazzone told her that if she pleaded guilty or if she was found guilty, she would automatically lose parental rights to Justin. In reality, there is no such automatic provision. In-

stead, that would involve a separate proceeding and separate proof and could in no way be characterized as automatic. Based on Mazzone's advice, Blommaert alleges that she was faced with the prospect of losing her child even if she accepted the lesser offense. Under those circumstances, she elected to gamble on the complete acquittal.

 The decision whether to enter a plea is ultimately the defendant's. (2 W. LaFave & J. Israel, Criminal Procedure §11.6 (1984); *I ABA Standards for Criminal Justice* §4—5.2(a)(i) (2d ed. 1980).) A defendant always has the right to refuse to plead to a lesser offense in the hopes of a full acquittal at trial. However, such a decision must be knowingly made after being fully and fairly informed of the consequences of pleading.

The decision whether to pursue a lesser offense, like the decision to plead, can only be made by the defendant after full and fair disclosure as to the potential consequences. Here, Mazzone had told Blommaert that a conviction would only mean two to three years in prison. When faced with the alternatives of outright acquittal or a short prison term, it is understandable that defendant might want to gamble on the acquittal, instead of offering the jury a third choice.

This court recently faced a similar situation in another case involving ineffective assistance of counsel. (*People v. Brocksmith* (1992), 237 Ill. App. 3d 818.) There, defendant was charged with the felony offense of theft by deception, but was convicted of the misdemeanor offense of deceptive practices. The jury instruction on deceptive practices had been tendered by defense counsel, despite the fact that the statute of limitations had run on the misdemeanor offense. Counsel never informed defendant that the limitations period had expired. Defendant argued that counsel was ineffective for tendering an instruction on a lesser offense without consulting defendant. This court held that it was ineffective assistance for an attorney to unilaterally tender a lesser offense instruction for an offense for which the statute of limitations had expired without the informed consent of defendant.

The *ABA Standards for Criminal Justice* are instructive on this issue. While there is no bright-line test for determining ineffectiveness, the United States Supreme Court has recognized that the ABA Standards are helpful as guides in determining what is reasonable conduct. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *Jones v. Barnes* (1983), 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308.

The ABA Standards provide, *inter alia*, that the decision what plea to enter is a decision which is to be made by the accused after full consultation with counsel. (*I ABA Standards for Criminal Justice*

§4—5.2(a)(i) (2d ed. 1980).) The ABA Standards also state that a lawyer should fully inform himself on the facts and the law and then candidly advise the accused concerning all aspects of the case, including a candid estimate of the probable outcome. (*I ABA Standards for Criminal Justice* §4—5.1(a) (2d ed. 1980).) Specifically, the commentary to that section notes:

> "The decision to plead guilty can be an intelligent one only if the defendant has been advised fully as to his or her rights and as to the probable outcomes of the alternative choices. \*\*\*
>
> \*\*\* Counsel should inform the defendant of the maximum and minimum sentences that can be imposed, but counsel should also be aware of the actual sentencing practices of the court and advise the defendant, when that is possible, what sentence is likely."

Similarly, the ABA Standards state that the decision as to whether to seek submission to the jury of a lesser included offense is one to be made by the defendant after full consultation with defense counsel. *I ABA Standards for Criminal Justice* §4—5.2, Commentary (2d ed. 1980).

■ The evidence presented at the post-conviction hearing shows that Mazzone was deficient in his knowledge of the possible sentences for the crimes. He admits telling his client that she would be up for parole in one year and possibly be out in two to three years. At the hearing, he attempted to characterize that as a personal opinion, not legal advice. He testified that if Blommaert had asked about potential sentences, he would have then looked up the appropriate statute sections. This evidence clearly reveals that Mazzone was deficient in his knowledge of the law.

This is not a case where counsel correctly informed defendant of the range of possible sentences, then merely incorrectly predicted that a certain sentence would be imposed. Instead, counsel failed to understand the possible sentences and thus wrongly informed defendant as to the possible range of sentences, telling her that she could be out of prison in a fraction of the actual minimum time. He told her that she might be eligible for work-release, when in fact such options are closed to a person convicted of first-degree murder. He misled her as to the possibility of her losing parental rights to her son.

Mazzone did not fulfill his obligation of fully informing Blommaert as to the ramifications of accepting or rejecting the plea agreement, thus causing her to reject the plea. Similarly, Blommaert's ignorance of the law led her to not seek an involuntary manslaughter instruction at trial.

Neither of Blommaert's decisions can be characterized as having been intelligently made after full consultation with counsel. We find that she has met her burden of showing (1) that counsel's conduct fell beneath an objective standard of reasonableness, and (2) that she was prejudiced by counsel's deficient performance. Accordingly, we hold that defendant was denied her constitutional right to effective assistance of counsel. We reverse her conviction and remand for a new trial.

Reversed and remanded.

McCUSKEY and HAASE, JJ., concur.