30 December 1999

No.  3--98-0244

(Consolidated with 3--98--0298)

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1999

THE PEOPLE OF THE STATE OF )  Appeal from the Circuit Court

ILLINOIS, )  of the 21st Judicial Circuit,

)  Kankakee County, Illinois,

Plaintiff-Appellee, )

)

)  Nos. 95--CF--238 & 96--CF--145

)

JAMES W. BROWN, )  Honorable

)  Daniel Gould,

Defendant-Appellant. )  Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

In case No. 95--CF--238, defendant, James W. Brown, pleaded guilty to aggravated battery (720 ILCS 5/12--4(a) (West 1994)) and was sentenced to a 24-month term of probation.  Subsequently, in case No. 96--CF--145, defendant was convicted of aggravated battery with a firearm, two counts of unlawful possession of a weapon by a felon, and two counts of unlawful possession of a firearm without the requisite firearm owner’s identification (FOID) card (720 ILCS 5/12--4.2(a), 24--1.1(a) (West 1996); 430 ILCS 65/2(a)(1) (West 1996)).   The trial court sentenced defendant to a prison term of natural life for aggravated battery with a firearm and concurrent 10-year terms of imprisonment for each of the other four weapons charges.  Later, the trial court revoked defendant’s probation for aggravated battery and imposed a sentence of 10 years’ imprisonment to run concurrently with defendant’s other prison terms.

On appeal, defendant contends, 
inter
 
alia
: (1) that he received ineffective assistance of counsel during plea negotiations in case No. 96--CF--145; (2) that the evidence was insufficient to prove him guilty of the weapons charges arising from his conduct on the day of his arrest; and (3) that he is entitled to outright reversal of his convictions for possession of a firearm without the requisite FOID card because the penalty for that offense violates the proportionate penalties clause of the Illinois Constitution.  For the reasons that follow, we reverse and remand.

In case No. 96--CF--145, a Kankakee County grand jury charged defendant with five offenses.  In count I, the grand jury alleged that defendant committed aggravated battery with a firearm on February 22, 1996, when he shot Eddie Jackson.  In count II, the grand jury alleged that defendant is a convicted felon who committed unlawful possession of a weapon by a felon when he possessed a handgun on February 22, 1996.  In count III, the grand jury charged defendant with unlawful possession of a weapon by a felon for possessing a handgun on February 25, 1996.  In counts IV and V, the grand jury alleged that, on February 22 and 25, respectively, defendant committed possession of a firearm without the requisite FOID card by possessing a firearm while being ineligible to apply for a FOID card.

In a December 9, 1996, letter to defense counsel, the State offered defendant an aggregate sentence of 18 years’ imprisonment in exchange for his plea of guilty to counts I and III in case No. 96--CF--145, an admission to the State’s petition to revoke probation in case No. 95--CF--238, and a plea of guilty to violating the terms of a bail bond in case No. 96--CF--688.  The State noted that defendant “has at least 5 felony convictions” including a 1980 conviction for armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A--2).

Defendant’s cause proceeded to a jury trial which resulted in his conviction on all five counts of the indictment.  Afterwards, the trial court ordered the preparation of a pre-

sentence investigation report (PSI).  The PSI revealed that defendant had been convicted of the Class X felony offenses of armed violence and home invasion in 1985 and that his 1980 conviction for armed violence had been a Class X felony.  Based on this information, the State filed a verified statement of defendant’s eligibility to be sentenced as a habitual criminal under the Habitual Criminal Act (720 ILCS 5/33B--1 
et
 
seq.
 (West 1996)) due to his conviction of aggravated battery with a firearm, his third Class X felony conviction.
(footnote: 1)  See 720 ILCS 5/33B--1 (West 1996).  Adjudication as a habitual criminal subjects a defendant to a mandatory sentence of natural life imprisonment.  720 ILCS 5/33B--1(e) (West 1996); 730 ILCS 5/5--5-

-3(c)(7) (West 1996).

Defendant filed a motion to vacate his convictions on the ground that he had received ineffective assistance of counsel during plea negotiations with the State when his counsel failed to advise him that he faced a mandatory sentence of natural life imprisonment if convicted of aggravated battery with a firearm.  Along with this motion, defendant filed four affidavits.

In the first affidavit, defense counsel averred that he never informed defendant that he would receive a sentence of natural life imprisonment if convicted of aggravated battery with a firearm.  Counsel acknowledged that he had been unaware of defendant’s complete criminal history during plea negotiations. Moreover, counsel admitted that he had failed to recognize that defendant faced a mandatory prison term of natural life if convicted of count I of the indictment.

In the second affidavit, an investigator for the Kankakee County Public Defender’s Office stated that she interviewed defendant on July 11, 1996.  The investigator’s notes of this interview, attached to her affidavit, reflect that defendant informed her that he had been convicted of armed violence in 1980 and armed violence and attempted murder in 1983.  The investigator averred that she promptly included these notes in defendant’s case file.

In the third affidavit, Kankakee County’s chief public defender averred that his January 14, 1998, review of defendant’s case file revealed that the file contained the notes of his investigator’s interview with defendant.  Attached to the affidavit is a copy of the notes contained in the file.  The notes are identical to those attached to the investigator’s affidavit.

In the fourth affidavit, defendant stated that no one ever advised him, nor was he ever aware, at any time prior to trial, that he would be subject to a mandatory sentence of natural life in prison if convicted of aggravated battery with a firearm.  Defendant also asserted that he would have accepted the State’s final plea offer had he known that he would be subject to the mandatory sentence.

At a hearing on defendant’s motion, defendant testified that he recalled providing the public defender’s investigator with information concerning his criminal history.  Defendant also affirmed that he was never aware, at any time prior to trial, that he faced a mandatory sentence of natural life.  Defendant further testified that defense counsel and he never discussed the maximum and minimum sentences for the offenses charged by the State.  Defendant also recalled that he rejected the State’s 18-

year plea offer and a subsequent offer of 15 years.

Defense counsel testified that he is a part-time assistant public defender.  Counsel could not recall reviewing with defendant the notes of the public defender’s investigator, or whether he had even seen these notes, prior to trial.  Counsel explained that he generally considers unreliable information concerning a client’s criminal history provided by the defendant or the public defender’s investigator.  Instead, counsel typically relies on the State to ascertain his client’s criminal history.

The trial court denied defendant’s motion.  In so ruling, the trial court found that neither the defense, nor the State, had been aware of defendant’s eligibility to be sentenced as a habitual criminal during plea negotiations.  Nevertheless, the trial court concluded that, assuming trial counsel’s performance was deficient for failure to advise defendant that he faced a prison sentence of natural life, defendant had not shown that such deficient performance had caused him to suffer prejudice.  The trial court reasoned that knowledge of the mandatory sentence could not have benefitted defendant because the State had not offered to dismiss or reduce the charge of aggravated battery with a firearm, the Class X offense triggering defendant’s eligibility for sentencing as a habitual criminal.

INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant contends that he received ineffective assistance of counsel during plea negotiations in case No. 96--

CF--145 when his trial counsel failed to inform him that he faced a mandatory prison sentence of natural life if convicted of aggravated battery with a firearm.

The Sixth Amendment to our federal constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. Const., amend. VI; 
McMahon v. Richardson
, 397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970).  This right applies to the plea bargaining process, as well as to trial proceedings.  
Hill v. Lockhart
, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).  Although a defendant has no constitutional right to plea bargain, if the State chooses to bargain, the defendant has the right to the effective assistance of counsel in negotiations with the State.  
People v. Curry
, 178 Ill. 2d 509, 687 N.E.2d 877 (1997).  Moreover, the right to the effective assistance of counsel extends to the defendant’s decision to reject a plea offer, even if the defendant subsequently receives a fair trial.  
Curry
, 178 Ill. 2d 509, 687 N.E.2d 877.

Claims of ineffective assistance of counsel arising from the plea bargaining process are evaluated under the test established in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  
Hill
, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366; 
Curry
, 178 Ill. 2d 509, 687 N.E.2d 877.  To prevail under 
Strickland
, a defendant must show that his counsel’s assistance was both deficient and prejudicial.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  In particular, the defendant must demonstrate that his counsel’s assistance was objectively unreasonable under prevailing professional norms, and that there is a reasonable probability that, but for counsel’s unprofessional conduct, the result of the proceeding would have been different.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

Deficient Performance

Whether to accept or reject a plea offer is a decision only the defendant can make.  
People v. Blommaert
, 237 Ill. App. 3d 811, 604 N.E.2d 1054 (1992).  In order for this decision to be a knowing and voluntary one, a criminal defense attorney must fully inform himself of the facts and the law relevant to the State’s offer and candidly advise his client as to the direct consequences of accepting or rejecting the offer.  
Blommaert
, 237 Ill. App. 3d 811, 604 N.E.2d 1054.  Part of this obligation is satisfied when defense counsel accurately informs his client of the maximum and minimum sentences that can be imposed for the offenses charged by the State.  
Blommaert
, 237 Ill. App. 3d 811, 604 N.E.2d 1054.

Here, defense counsel failed to inform defendant that he would receive a sentence of natural life imprisonment if convicted of aggravated battery with a firearm.  As a result, counsel did not fulfill his duty to accurately inform defendant of the direct consequences likely to stem from acceptance or rejection of the State’s plea offer.

The State asserts that counsel’s performance should not be considered deficient because counsel’s mistake, if any, was a mistake of fact rather than a mistake of law.  The State fails to cite any authority for the proposition that assistance of counsel cannot be rendered ineffective due to a mistake of fact.  On the contrary, defense counsel’s failure to investigate relevant facts may constitute professional neglect sufficient to satisfy the deficient performance prong of an ineffectiveness claim
.  See 
People v. Davis
, 287 Ill. App. 3d 46, 677 N.E.2d 1340 (1997) (counsel ineffective for failing to discover defendant’s prior out-of-state conviction).

Moreover, defendant’s ineffectiveness claim is not defeated because criminal histories provided by defendants are often unreliable.  Defendant provided a materially accurate criminal history to the public defender’s investigator.  In order to make a knowing and voluntary decision to accept or reject the State’s proposed plea agreements, defendant needed his attorney to advise him that he would spend the rest of his life in prison if convicted on count I of the indictment.  By failing to do so, counsel fell short of meeting the minimum standard of performance for a criminal defense attorney.

Prejudice

Having determined that defense counsel’s performance was deficient, we must ascertain whether defendant sustained prejudice as a result of the neglect.  A defendant suffers prejudice when there is a reasonable probability that, but for his counsel’s deficient performance, the result of the proceedings would have been different.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  Under the “reasonable probability” standard, a defendant need not show that his counsel’s unprofessional errors more likely than not altered the outcome of the proceedings.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  Rather, a defendant need only establish a probability sufficient to undermine confidence in the outcome.  
Strickland
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

In the case at bar, neither party to the plea negotiations was aware that defendant would be subject to a mandatory sentence of natural life imprisonment if convicted of aggravated battery with a firearm.  In addition, the State never offered to dismiss or reduce this charge.  As a result, had defendant accepted either of the State’s offers, the trial court could not have given its approval to the agreement because compliance with its terms would have required the court to impose an unauthorized sentence.  This fact distinguishes our case from the facts of 
Curry
.  In that case, as in the case 
sub
 
judice
, 
both parties were unaware that defendant would be subject to a mandatory sentence if convicted of the offenses charged by the State.  However, had the defendant in 
Curry
 accepted the State’s proposed plea agreement, he would not have been subject to a mandatory sentence because the State’s proposal included an offer to dismiss one of the charges triggering the mandatory sentence.  See 
Curry
, 178 Ill. 2d 509, 687 N.E.2d 877.

Even so, we do not believe that this factual distinction is legally consequential.  The question of whether a defendant has suffered prejudice should not turn on whether the State has unwittingly failed to propose an authorized sentence during tainted plea negotiations.  It would be absurd to conclude that a defendant’s right to the effective assistance of counsel should depend upon such happenstance.

Instead, where neither party is aware that the defendant is subject to a severe, mandatory sentence, defense counsel’s ignorance is sufficient to undermine confidence in the outcome of the negotiations.  Had he been aware, defense counsel could have negotiated for dismissal or reduction of the aggravated battery with a firearm charge.  There is no telling whether the State would have ever agreed to such a proposal.  But, of course, the State’s response to plea overtures is always, to some degree, conjectural.  Such was the case in 
Curry
.  Yet, in that case, the State’s discretion in plea bargaining did not foreclose a finding of prejudice despite the possibility that the State, now cognizant of the mandatory sentence on remand, might decline to make defendant the same plea offer or would refuse to engage in any negotiations.

We must also reject the State’s argument that defendant did not establish prejudice in the absence of evidence that defense counsel had recommended that defendant reject the State’s plea offers.  In support of this argument, the State points out that the supreme court in 
Curry
 considered such a recommendation probative of whether the defendant had proven the prejudice component of his ineffectiveness claim.  See 
Curry
, 178 Ill. 2d 509, 687 N.E.2d 877.  While we agree that the supreme court found the recommendation significant, we do not believe that the court considered it a 
sine
 
qua
 
non
 factor.  As in 
Curry
, the gravamen of defendant’s ineffectiveness claim is that his counsel’s inadequate representation made it impossible for him to make a knowing and voluntary decision to accept or reject the State’s plea offer.  Being unaware of the penalties which might be imposed upon conviction, defendant was in no better position to assess the merits of his counsel’s recommendation than he was in assessing the State’s plea offer.  Thus, the State’s argument is unavailing.

Accordingly, we hold that defendant did not enjoy the effective assistance of counsel during plea negotiations.  Therefore, defendant’s convictions in case No. 96--CF--145 must be reversed and his cause remanded for a resumption of plea negotiations and a new trial, if necessary.  In addition, the trial court’s judgment revoking defendant’s probation in case No. 95--CF--238 must be reversed, and his cause remanded for further proceedings, because that judgment was based solely on defendant’s convictions in case No. 96--CF--145.

Generally, a decision to remand a cause for a new trial alleviates the need to address other issues.  However, the constitutional guarantee prohibiting double jeopardy requires that we address defendant’s challenge to the sufficiency of the evidence supporting his conviction on counts III and V.  See 
People v. Digirolamo
, 179 Ill. 2d 24, 688 N.E.2d 116 (1997).  In addition, we consider it prudent to address defendant’s assertion that he is entitled to outright reversal of his convictions for possession of a firearm without the requisite FOID card.  See 
People v. Walls
, 220 Ill. App. 3d 564, 581 N.E.2d 264 (1991).

SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to prove him guilty of count III (unlawful possession of a weapon by a felon on February 25, 1996) and count V (unlawful possession of a firearm without the requisite FOID card on February 25, 1996).  Specifically, defendant argues that the State failed to prove that he knowingly possessed a firearm.

On February 22, 1996, Eddie Jackson suffered a gunshot wound.  Jackson told police that defendant was the shooter.  On February 25, 1996, Jackson telephoned police from a filling station shortly after having seen defendant at a pool hall.

Officer Willie Corbett testified that Officer Charles Johnson and he met Jackson at the filling station that evening.  After speaking with Jackson, the three went to the pool hall in search of defendant where they were met by another police officer.  When Jackson and the officers had been unable to locate defendant within the pool hall, they went outside.  Corbett then saw what looked like a human figure standing under a tree near the pool hall.  When Corbett shined his flashlight in that direction, the figure fled and Corbett gave chase.  As Corbett followed the figure down a gangway situated between the pool hall and a fence, he saw an object fall from the figure’s body and heard what sounded like metal hitting concrete.  The figure reached for the object in an apparently unsuccessful effort to retrieve it.  Corbett flashed his light in the area where the object had fallen.  The object was a handgun.  Corbett and Johnson then apprehended the figure some 10 feet from the spot where the handgun lay.

Corbett made an in-court identification of defendant as the person whom Johnson and he had apprehended.  Corbett identified a handgun that had been admitted into evidence as the .22 caliber revolver recovered from the scene of defendant’s arrest.  Corbett recalled that there were no other objects in the area where the gun was recovered.  A photograph corroborated this fact.

Results of forensic tests of the gun recovered during defendant’s arrest did not produce any fingerprints suitable for comparison.  Ballistics test were not performed because treating physicians had elected to leave the bullet in Jackson’s body.

A court of review will not reverse a conviction unless, after viewing all of the evidence in the light most favorable to the State, the court concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985).  A person commits unlawful possession of a weapon by a felon if he has been convicted of a felony and knowingly possesses a firearm on or about his person.  720 ILCS 5/24--1.1(a) (West 1996).  No person may possess a firearm within this state without having in his possession a valid FOID card issued in his name.  430 ILCS 65/2(a)(1) (West 1996).

When viewed in the light most favorable to the State, the circumstantial evidence adduced at trial permitted a rational trier of fact to conclude that defendant knowingly possessed a firearm on the evening of February 25, 1996.  Proof beyond a reasonable doubt does not require the exclusion of every possible doubt, and a conviction may be sustained wholly upon circumstantial evidence where the entire chain of circumstances leads to a reasonable and moral certainty that the defendant committed the crime.  
People v. Evans
, 143 Ill. App. 3d 236, 492 N.E.2d 1036 (1986).  Such is the case here.  Officer Corbett witnessed an object fall from defendant’s body.  Defendant reached for the object.  Defendant was apprehended within 10 feet of the spot where the object lay.  The object turned out to be a .22 caliber handgun.  There were no other objects in the vicinity.  Accordingly, we hold that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of counts III and V of the indictment in case No. 96--CF--145.  On remand, therefore, the State may elect to retry defendant on these same charges. 

PROPORTIONATE PENALTIES CLAUSE

Finally, defendant maintains that he is entitled to outright reversal of his convictions for possession of a firearm without the requisite FOID card because his sentence violates the proportionate penalties clause (Ill. Const. 1970, art. I, § 11).

Prior to January 1, 1995, possession of a firearm without the requisite FOID card was a Class A misdemeanor.  430 ILCS 65/14 (West 1994).  Effective January 1, 1995, it became a non-probationable Class 3 felony for any person ineligible to obtain a FOID card to possess a firearm without the requisite FOID card.  Pub. Act 88--680, art. 50, §§50--3 and 50---15, eff. January 1, 1995 (amending 430 ILCS 65/14 (West 1996) and adding 730 ILCS 5/5--5--3(c)(2)(N) (West 1996)).  In 
People v. Davis
, 177 Ill. 2d 495, 687 N.E.2d 24 (1997), our supreme court held that this enhanced penalty violates the proportionate penalties clause when compared to the penalty for the offense of unlawful use of a weapon by a felon, a probationable Class 3 felony (730 ILCS 5/5--

8--1(a)(6) (West 1996)).

The effect of an enactment of an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the unconstitutional amendment.  
People v. Gersch
, 135 Ill. 2d 384, 553 N.E.2d 281 (1990).  Accordingly, we hold that defendant is not entitled to an outright reversal of his convictions for possession of a firearm without the requisite FOID card.  Rather, if on remand defendant is again convicted of this offense, he will be entitled to the sentence prescribed for a Class A misdemeanor.  See 
People v. Cosby
, 305 Ill. App. 3d 211, 711 N.E.2d 1174 (1st Dist. 1999); but see 
People v. Garza
, 298 Ill. App. 3d 452, 699 N.E.2d 181 (2d Dist. 1998).

For the foregoing reasons, the judgments of the circuit court of Kankakee County in cases No. 96--CF--145 and No. 95--CF-

-238 are reversed and defendant’s cause remanded for proceedings consistent with this opinion.

Reversed and remanded.

KOEHLER and LYTTON, J.J., concur.

FOOTNOTES
1:
For purposes of the Habitual Criminal Act, the State treated defendant’s 1985 convictions as a single Class X felony.  See 720 ILCS 5/33B--1(c) (West 1996).