2022 IL App (1st) 201290-U

No. 1-20-1290

Order filed June 24, 2022

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 97201 |
| | ) | |
| DESHAUN SPEARS, | ) | Honorable |
| | ) | Michael Joseph Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for unlawful possession of a weapon by a felon is affirmed where the evidence was sufficient to prove beyond a reasonable doubt that he constructively possessed the handgun that was recovered from the vehicle he was driving.

¶ 2    Following a bench trial, defendant Deshaun Spears was found guilty of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) and sentenced to five years' imprisonment. On appeal, defendant argues the State failed to prove beyond a reasonable doubt

that he constructively possessed the handgun recovered from the vehicle he was driving. For the following reasons, we affirm.

¶ 3    During a traffic stop in Chicago on the evening of December 19, 2018, police officers recovered a firearm from the vehicle defendant was driving. Defendant was ticketed for certain vehicle violations, including driving on a suspended or revoked license and operating an uninsured vehicle, and was later charged with multiple firearm offenses. The State proceeded to trial on a single count of unlawful use or possession of a weapon by a felon.

¶ 4    At trial, Chicago police officer Thomas Fennell testified that on December 19, 2018, at about 9:30 p.m., he was driving an unmarked squad car near 12700 South Lowe Avenue. Officers Luke Opoka and Lammert were passengers in the squad car.[1] Fennell observed a silver Chevrolet sedan traveling eastbound on 127th Street. He drove alongside the vehicle and observed that defendant—the driver and sole occupant—was not wearing a seatbelt. Fennell activated the squad car's emergency equipment in order to conduct a traffic stop, whereupon defendant kept driving for about half a block before pulling over.

¶ 5    Fennell walked to defendant's driver's side window, which was open, and noted a strong smell of "[u]nburnt" cannabis. Defendant could not produce a driver's license or proof of insurance. The officers handcuffed defendant and escorted him to the squad car pending a "name check" to verify whether he had a valid driver's license.

¶ 6    Fennell then searched the Chevrolet, while defendant stood with Lammert near the front of the squad car. Fennell searched the front driver's seat and the dashboard area. Asked to describe the search of the dashboard area, Fennell testified: "There was a piece of trim that would be on the

_____

[1] The record on appeal does not contain Officer Lammert's first name.

dashboard that I could see was not flush with the rest of the dashboard, how it should be, so I manipulated that and it opened—basically fell out and opened up." Asked to describe the means of opening, Fennell testified: "Upon manipulation, it basically just kind of almost fell out, if you will." Once the compartment was open, he saw a firearm within.

¶ 7    Fennell instructed Opoka to remove the handgun from the compartment using gloves. Fennell then "saw that [defendant] was attempting to flee and Officer Lammert was holding onto him." The firearm was a "loaded" .40-caliber semiautomatic pistol, and its serial number was "defaced" and "etched over."

¶ 8    On cross-examination, Fennell testified that, after curbing defendant, Fennell parked at an angle in front of defendant's Chevrolet. During their "brief conversation" while defendant was still in the vehicle, Fennell looked inside and, at that time, did not notice anything wrong with the trim of the dashboard. Fennell could not recall defendant moving his hands or moving toward the trim piece. After Fennell informed Opoka of the firearm, Opoka walked from the driver's side of the Chevrolet to the passenger's side.

¶ 9    Viewing video from Opoka's body camera, Fennell estimated that his position at the Chevrolet was about 10 feet from where defendant was standing.[2] Fennell testified that after Opoka said, "Damn, we got a problem[,]" defendant's head turned toward the camera. Fennell identified, on the video, a headlight switch hanging down from the open compartment in the "area where the headlight switch goes in the dash." He informed Lammert of the gun's presence by saying "143" as heard on the video. Fennell identified Opoka removing the gun from the compartment and

---

[2] The State published footage from Opoka's and Lammert's body cameras, which is included in the record on appeal. This court has reviewed the footage. See paragraphs 18-19 *infra*.

ejecting the magazine. Fennell agreed that the video recorded a verbal exchange between Opoka and defendant. Fennell testified that, after this verbal exchange, defendant attempted to flee, and was taken to the ground by Opoka and Lammert.

¶ 10 On redirect, Fennell explained that "143" was a "term used with the Chicago [p]olice" to indicate to "others" that a firearm has been found.

¶ 11 Upon questioning by the trial court, Fennell testified that, when he discovered the firearm, he was at the driver's-side door of the Chevrolet, while defendant stood at the front of the squad car, about 10 feet in front of Fennell and slightly to his right. Fennell said 143 as soon as he saw the firearm and before Opoka removed it from the compartment. Fennell denied that Opoka, after retrieving the firearm, carried it to defendant. Asked what Opoka did with the firearm, Fennell testified, "I believe he put it inside of our vehicle. I'm not sure if he put it in his pocket or what he did with it." No more than "20 to 30 seconds" elapsed from when the firearm was found to when defendant tried to flee.

¶ 12 The name check revealed that defendant did not have a valid driver's license. Fennell also testified that cannabis was discovered and that he believed it was recovered from defendant's pocket. Fennell did not recall any personal property of defendant's being found in the Chevrolet.

¶ 13 On re-cross, Fennell testified that defendant had an active warrant for outstanding child support when he was arrested.

¶ 14 Officer Opoka testified that during the traffic stop, he was originally on the passenger's side, but moved to the driver's side when Fennell "indicated to [him]" that a firearm was in the vehicle. Reviewing the video from his body camera, Opoka testified that he said 143, "our UCR [Uniform Crime Reporting] code for a weapon." Using gloves, he retrieved the firearm from the

"void" located "behind the light switch piece that was ajar." Opoka then saw defendant try to flee from Lammert. During processing, defendant provided Opoka with his address as 12608 South Bishop Street in Calumet Park.

¶ 15    Lammert testified that while Fennell and Opoka searched the Chevrolet, he and defendant stood about 10 feet away, by the squad car. From where Lammert was standing, he was able to see what the other officers were doing, and he could see that they were searching the front seat of the vehicle. Because defendant was "[t]he whole time *** looking back at the [Chevrolet] and *** moving around a lot," Lammert placed his left arm around defendant to ensure he did not flee. Lammert, when asked whether he was "alerted to the presence of anything during that search," testified that he was "informed of the number 143, which means that a weapon was recovered in the vehicle." He explained that "when the code name was given, [defendant] tried to run," and that this attempted flight followed "immediately" after the gun was recovered.

¶ 16    On cross-examination, Lammert testified he believed the squad car was traveling westbound at the time of the stop and that defendant "attempted to make a turn and was not stopping." Lammert was in the back seat of the squad car and, from his position, could not have observed whether defendant made any furtive movements with his hands.

¶ 17    After defendant was escorted to the squad car, Lammert activated his own body camera. Reviewing this video with audio, Lammert did not hear "143" between the time defendant was seen to be leaning on the squad car and the time he "started to pull away." Lammert could not recall who said 143, but testified "it is something we always communicate amongst ourselves when a weapon is recovered." Lammert agreed the video recorded a discussion between himself and defendant about who owned the Chevrolet.

¶ 18    The videos from the body cameras of Opoka and Lammert that were played at trial and introduced by the State as exhibits are included in the record on appeal and were reviewed by this court. As the video from Opoka's camera begins, he moves from the passenger's seat to the driver's seat of the Chevrolet, dons gloves, points a flashlight into the open compartment at the dashboard, retrieves the gun, and empties it of ammunition on the front seat. Someone is heard saying, "Damn, we got a problem." At times, defendant can be seen positioned several feet ahead of the Chevrolet, standing with Lammert by the squad car. The video from Opoka's camera shows a small trim piece, apparently the housing unit for the light switch, hanging by what appear to be wires from the open compartment. Before defendant attempts to flee, one of the officers, Opoka or Fennell, makes comments that appear to be directed to defendant, who states that the vehicle is his brother's car and asks "What did I do?"

¶ 19    In the video from Lammert's camera, comments by defendant and Lammert are audible; however, "143" is inaudible or indistinct, as are comments by Opoka and Fennell that are heard on the video from Opoka's camera. Just before defendant attempts to flee, he can be heard to say "What's going on? That's why I hate driving other people's cars, bro."

¶ 20    The State entered the stipulation of defendant to his prior 2015 conviction for aggravated unlawful use of a weapon.

¶ 21    The defense entered the title and registration for the Chevrolet. The exhibit consists of a certified title/registration record for a 2009 Chevrolet Sedan reflecting "Adonis K[.] Bailey" as "single owner." The address listed for the owner is 12608 South Bishop Street in Calumet Park.

¶ 22    During closing arguments, defense counsel noted that in Lammert's body camera video, defendant could be heard saying the Chevrolet was registered to his brother, Adonis Bailey. The

trial court noted that no testimony was given regarding the car's ownership. Nevertheless, the court acknowledged that the defense exhibit showed the car was "registered to a Bailey, Adonis." The State asserted, "It is in fact the brother[,]" and noted that "the exact same address that the vehicle is registered to" was given by defendant to the police.

¶ 23    Without elaboration, the trial court found defendant guilty of unlawful use or possession of a weapon by a felon. Defendant filed a motion for reconsideration or for a new trial, arguing that the State failed to prove that defendant had knowledge of and control over the firearm found in the Chevrolet.

¶ 24    After hearing arguments, the court denied defendant's motion for reconsideration or for a new trial. The court noted that there were "indications" that defendant knew the firearm was present and that the "biggest indication" was his attempted flight while in handcuffs when "the only other thing that he had to worry about" was a charge for driving without a valid driver's license. The court noted that "[p]eople do not run from the police for driving offenses." The court also relied upon defendant's close proximity to the weapon and on Fennell's description of the dashboard's appearance prior to his discovery of the compartment:

> "[T]he gun was a foot and a half or two feet from where [defendant] was driving, and a piece of equipment that was from the dashboard was partially removed, as I recall. It was sticking out. There was something abnormal about it which lead [sic] the police to take that off and find the gun. So it was clearly within his range."

The court acknowledged that the Chevrolet was registered to someone other than defendant but noted there was no evidence that the owner was present or that any person other than defendant had control of the vehicle at any relevant time. The court also noted that, "furthermore, people who own guns don't leave them in the car."

¶ 25     After a hearing, the court sentenced defendant to five years' imprisonment. In doing so, the court stated that the fact that defendant did not own the vehicle did not "carry much weight" because defendant attempted to flee from the police, indicating his knowledge that the gun was present and that the police had recovered it. The court further stated that "[i]f [he] hadn't run, maybe it would be different."

¶ 26     On appeal, defendant contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt. According to defendant, the State failed to prove constructive possession, as was required because the firearm was not found on his person.

¶ 27     "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). " 'The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt.' " *People v. Jackson*, 232 Ill. 2d 246, 281 (2009) (quoting *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, drawing reasonable inferences therefrom, and resolving conflicts in the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). The trier of fact is not required to "disregard inferences which flow normally from the evidence before it," nor to "search out all possible explanations consistent with innocence, and raise those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60 (citing *People v. Campbell*, 146 Ill. 2d 363, 380 (1992)).

¶ 28    Accordingly, when a defendant challenges the sufficiency of the evidence, the appellate court, considering the evidence in the light most favorable to the State, "must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *Siguenza-Brito*, 235 Ill. 2d at 224 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This court will reverse the trial court's judgment only if the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *People v. Bradford*, 2016 IL 118674, ¶ 12 (citing *Campbell*, 146 Ill. 2d at 375). In making this determination, a reviewing court must not substitute its judgment for that of the trial court on questions involving the weight of the evidence or the credibility of the witnesses. *Bradford*, 2016 IL 118674, ¶ 12 (citing *Campbell*, 146 Ill. 2d at 375).

¶ 29    Defendant was convicted of unlawful use or possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2018). To sustain this conviction, the State was required to prove beyond a reasonable doubt that he (1) had a prior felony conviction and (2) knowingly possessed or used a prohibited weapon. *People v. Hines*, 2021 IL App (1st) 191378, ¶ 25 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992)). Prohibited weapons include firearms and firearm ammunition, among others. 720 ILCS 5/24-1.1(a) (West 2018).

¶ 30    Defendant solely argues that the State failed to prove he possessed the handgun found inside the Chevrolet.

¶ 31    The statute at issue prohibits both actual and constructive possession of a handgun by a felon. *People v. Wise*, 2021 IL 125392, ¶ 24 (quoting 720 ILCS 5/24-1.1(a) (West 2014)). " 'Actual possession is proved by testimony that the defendant exercised some form of dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it.' " *Wise*,

2021 IL 125392, ¶ 24 (quoting *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27). No testimony was adduced to suggest defendant was actually in possession of the handgun, and the State does not argue the firearm was found on defendant's person and did not present evidence that he handled it. Therefore, the issue is whether the State presented sufficient evidence to demonstrate his constructive possession of the gun.

¶ 32    "Evidence of constructive possession is 'often entirely circumstantial.' " *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003) (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)). To establish constructive possession, " 'the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area where the firearm was found.' " *Wise*, 2021 IL 125392, ¶ 28 (quoting *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10). " 'Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt.' " *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 39 (quoting *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995)).

¶ 33    In this court, defendant argues that the State failed to prove beyond a reasonable doubt that he constructively possessed the handgun found in the Chevrolet. He maintains that he did not have knowledge that the gun was present in the car where: the gun was entirely hidden; the State failed to present evidence that he owned or handled the gun or the hidden compartment; he made no furtive movements while in the vehicle that might otherwise suggest he knew of the gun's location; and no evidence suggested he had been driving the car for a significant period before being curbed. He also maintains that the State failed to establish he had control of the vehicle where, although

he was driving the Chevrolet, he did not own it, and where he presented evidence that another individual, his brother, owned the vehicle.

¶ 34　We first address the second element of constructive possession—whether defendant exercised immediate and exclusive control over the area where the gun was found. The control element is established by demonstrating that the defendant had the " 'intent and capability to maintain control and dominion' over an item, even if he lack[ed] personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). "Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband." *Faulkner*, 2017 IL App (1st) 132884, ¶ 39 (citing *McCarter*, 339 Ill. App. 3d at 879).

¶ 35　Here, viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to find that defendant controlled the vehicle from which the contraband was recovered. Although defendant did not own the vehicle, he was its driver and sole occupant when the officers curbed it—facts that support an inference of control. See *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 32 (defendant's ownership of a vehicle is relevant to, but not dispositive of, control element); *People v. Chavez*, 327 Ill. App. 3d 18, 26 (2001) ("it is control of the vehicle rather than ownership *** which is pertinent to proof of control of the area" in which contraband is found); *People v. McNeely*, 99 Ill. App. 3d 1021, 1023-24 (1985) ("because the defendant was the driver of the vehicle, and because he had merely a lone passenger, defendant had immediate and exclusive control of the inside of the automobile" for purposes of constructive possession of methaqualone recovered from under the front passenger's seat); *People v. Janis*, 56 Ill. App. 3d 160, 163 (1977) (facts supporting a finding of control over the vehicle for purposes of constructive

possession included that defendant was in driver's seat, gave police reason to approach the vehicle, and claimed vehicle was borrowed from another).

¶ 36    The sole remaining question is whether the State proved the "knowledge" element of constructive possession—that is, that defendant knew the firearm was in the vehicle.

¶ 37    A defendant's mere presence in a vehicle, without more, does not establish his knowledge of a weapon therein. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). An inference of knowledge arises when the contraband is located in a place over which the defendant had "regular ongoing, control" and it is "an item that human experience teaches is rarely, if ever, found unaccountably in such a place." *People v. Hampton*, 358 Ill. App. 3d 1029, 1032 (2005). In some cases, "one's knowledge of contraband may be, at least in part, inferred from one's control over the area in which the contraband was found." *Bogan*, 2017 IL App (3d) 150156, ¶ 29 (citing *People v. Minniweather*, 301 Ill. App. 3d 574, 578 (1998)).

¶ 38    After reviewing the evidence in the light most favorable to the State, we find the evidence sufficient to prove beyond a reasonable doubt that defendant knew the firearm was in the vehicle. Defendant gave the police a residential address that is the same as that listed on the title and registration of the owner, who was acknowledged to be defendant's brother. Although the firearm was fully concealed while defendant was in the vehicle, Fennell discovered the firearm by noticing that a piece of the dashboard trim housing the light switch, located to the left of the steering wheel, was "not flush" with the rest of the dashboard, "not how it should be." Once he "manipulated" the trim piece, it "fell out" to reveal the compartment containing the firearm, which was immediately visible. The facts that, according to Fennell's testimony, the compartment was located so close to the driver's area and was readily accessible upon "manipulation" suggest the firearm was

intentionally placed there to be readily accessible to the driver. The record contains no reason to doubt that the dashboard's irregular appearance was also visible to defendant. *Hampton*, 358 Ill. App. 3d at 1032 (noting an inference of knowledge arises when the contraband is located in a place over which the defendant had "regular ongoing, control" and it is "an item that human experience teaches is rarely, if ever, found unaccountably in such a place").

¶ 39     Also supporting the inference of defendant's knowledge of the presence of the handgun is his conduct before and during the traffic stop, as conveyed through the officers' testimony and video footage. The evidence indicates that defendant did not immediately stop driving after Fennell activated the squad car's emergency equipment: Fennell testified that defendant stopped only after driving for about half a block, and Lammert testified that defendant attempted to turn before stopping, suggesting a predisposition to flee.

¶ 40     Defendant's conduct during the search further supports the inference of knowledge. Lammert testified that, from about 10 feet away, he could see the other officers in the front seat area of the passenger compartment of the Chevrolet while they searched; thus, defendant, standing with Lammert, presumably could see this activity as well. During this search, Lammert suspected that defendant might flee, because, though handcuffed, he was "moving around a lot." Most importantly, defendant *did*, in fact, finally run, and did so after Opoka recovered the firearm. It is well established that a fact-finder may consider evidence of flight "as tending to demonstrate a defendant's consciousness of guilt." *People v. Moore*, 2015 IL App (1st) 140051, ¶ 26 (citing *People v. Harris*, 52 Ill. 2d 558, 561 (1972)); see also *People v. Ross*, 2019 IL App (1st) 162341, ¶ 32 (a defendant's flight from police demonstrates "consciousness of guilt") (citing *People v. Hart*, 214 Ill. 2d 490, 519 (2005)). "The inference of guilt which may be drawn from flight depends

- 13 -

upon the knowledge of the suspect that the offense has been committed and that he is or may be suspected." *Moore*, 2015 IL App (1st) 140051, ¶ 26 (citing *People v. Lewis*, 165 Ill. 2d 305, 349 (1995)).

¶ 41 This evidence, and the reasonable inferences therefrom, are sufficient to establish that defendant had knowledge of the handgun's presence in the car. Stated differently, the evidence is not so unbelievable, improbable, or palpably contrary to the court's finding so as to create a reasonable doubt of guilt. *Faulkner*, 2017 IL App (1st) 132884, ¶ 39.

¶ 42 Nevertheless, defendant argues that the State failed to prove, beyond a reasonable doubt, that he knew the gun was present. He relies, primarily, on the fact that he did not own the vehicle, and the absence of the four factors set forth in *Bailey*, 333 Ill. App. 3d at 891 (citing *People v. Davis*, 50 Ill. App. 3d 163, 167-68 (1977)). In *Bailey*, the court identified as factors from which knowledge of a weapon's presence within a vehicle could be inferred (1) the visibility of the weapon from the defendant's position in the vehicle, (2) the period of time during which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon. *Bailey*, 333 Ill. App. 3d at 891-92 (citing *Davis*, 50 Ill. App. 3d at 168); see also *People v. Thomas*, 2019 IL App (1st) 162791, ¶ 27 (listing similar factors).

¶ 43 However, the specific factors in *Bailey* are more pertinent in cases involving a question of whether defendant, among multiple occupants, might have had constructive possession of a weapon, or where the firearm was not fully concealed within a hidden compartment. *Bailey*, 333 Ill. App. 3d at 889-90, 892 (nine-millimeter Ruger was found beneath front passenger's seat, where the defendant sat); *Davis*, 50 Ill. App. 3d at 164, 165, 168 (1977) (portion of shotgun barrel

protruded from beneath driver's seat while the defendant sat in the front passenger's seat); *Thomas*, 2019 IL App (1st) 162791, ¶¶ 7, 27 (five inches of a firearm's extended magazine protruded from beneath the front passenger's seat of a parked vehicle owned and driven by the defendant); but see *Hampton*, 358 Ill. App. 3d at 1033 (applying all four factors from *Bailey* and concluding State failed to prove beyond a reasonable doubt that driver-defendant, lone occupant in his late brother's vehicle, had knowledge of gun found inside a tube sock located in the glove compartment).

¶ 44 Here, the light switch housing fully concealed the firearm, making it invisible to defendant regardless of its size, such that an analysis of the first, second, and fourth *Bailey* factors is a foregone conclusion. As to the third *Bailey* factor—whether defendant made furtive movements consistent with an attempt to retrieve or hide the weapon—the hidden compartment's very existence suggests a vehicular modification was made, at least in part, to allow the driver to keep contraband hidden from authorities while obviating any need for furtive movements upon apprehension. Nevertheless, we recognize that these factors from *Bailey* emphasize that, in the present case, the total invisibility of the handgun does weigh against the finding of guilt.

¶ 45 The *Bailey* factors do not, however, constitute the *exclusive* means for determining whether a vehicle occupant knew that contraband was present. As mentioned, "[k]nowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place where it was found." *Spencer*, 2012 IL App (1st) 102094, ¶ 17; see also *Bailey*, 333 Ill. App. 3d at 892 ("Courts should also consider any other relevant circumstantial evidence of knowledge, including whether the defendant had a possessory or ownership interest in the weapon or in the automobile in which the weapon was found."). Here, although the trial court acknowledged that defendant did not own the Chevrolet, and no evidence

suggests he owned the firearm, the State presented additional circumstantial evidence pertinent to defendant's knowledge. As noted, Fennell testified as to the dashboard's appearance and his ready discovery of the secret compartment upon manipulating the trim piece. Additionally, defendant's conduct supports an inference that he knew the gun was present. See *People v. Hamblin*, 107 Ill. App. 3d 109, 111 (1982) (affirming conviction based on facts that the defendant-driver was the vehicle's sole occupant, that contraband was within his easy reach, and that his "resistance when being arrested" was comparable to "flight" and thus "corroborated the inference, arising from his possession and control of the [vehicle], that he had knowing control of the contraband").

¶ 46 Although defendant does not deny that he attempted to flee the police, he does deny that his conduct supports the trial court's inference of his knowledge of the weapon's presence. As to his attempt to flee, he first points to alternative explanations, aside from a consciousness of guilt over the discovery of the firearm. He claims that, at the time of his flight, he was in fear, based on his youth and apprehension of the police. He also points out that he was suspected of other crimes—marijuana possession, driving without a license and proof of insurance, and failure to pay child support—which could also have motivated his attempt to run. Second, he points out that he did not attempt to flee until up to 30 seconds after the gun was discovered. (Defendant's Br. 5)

¶ 47 Defendant's argument essentially invites this court to substitute our judgment for that of the trier of fact on this matter. However, it is not the function of this court to retry the defendant, reweigh trial evidence, or otherwise undermine the trial court's judgment. *People v. Smith*, 2020 IL App (3d) 160454, ¶ 34. Thus, we will not second-guess the credibility determinations of the witnesses or the weighing of the trial evidence of defendant's knowledge that the weapon was present. As the reviewing court, we do not "search out all possible explanations consistent with

[defendant's] innocence" and raise them to a level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. "Proof beyond a reasonable doubt does not require the exclusion of every possible doubt"; rather, "a conviction may be sustained wholly upon circumstantial evidence where the entire chain of circumstances leads to a reasonable and moral certainty that the defendant committed the crime." *People v. Peete*, 318 Ill. App. 3d 961, 965-66 (2001) (citing *People v. Brown*, 309 Ill. App. 3d 599, 608 (1999)); see also *People v. Gray*, 2017 IL 120958, ¶ 47 ("[T]he fact-finder is charged with deciding how flaws in part of the testimony affect the credibility of the whole." (Internal quotations omitted.)).

¶ 48    Defendant's remaining arguments point out purported deficiencies in the State's case to suggest that his knowledge of the firearm was not established at trial. He notes that no DNA or physical evidence ties him to the gun. However, physical evidence is not required in order to prove constructive possession. *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 68 ("[T]he absence of such forensic evidence does not, by itself, create a reasonable doubt about a defendant's possession of an item of contraband."). Likewise, he argues that no photographic or video evidence depicted the dashboard's appearance before it was opened. Again, the absence of such evidence is nonfatal to the conviction. The court clearly found Fennell's testimony regarding the appearance of the dashboard and light switch unit to be credible. Moreover, Opoka's body camera footage, showing the location of the compartment and the retrieval of the firearm, corroborated Fennell's testimony.

¶ 49    Finally, we find unfounded defendant's contention that the trial court shifted to him the burden of proving his innocence. In support of this argument, he notes the trial court, in acknowledging that he was not the Chevrolet's owner, asserted there was no evidence that any person but him was in control of the vehicle at any relevant time. However, it was defendant who

argued that the vehicle was not his own, and who introduced evidence to establish this fact. The court's commentary that such evidence did not disprove constructive possession was entirely consistent with the law. Two or more persons' common access to a vehicle or premises may give rise to common control and the question of who among them constructively possesses the contraband found therein. See *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("[I]f two or more persons share immediate and exclusive control or share the intention and power to exercise control, then each has possession[,]" and "[w]here possession has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances."). Efforts by the trial court "to test, support, or sustain the defense's theories" does not amount to burden-shifting, as the trial court "is free to comment on the implausibility of the defense's theories, as long as it is clear from the record that the trial court applied the proper burden of proof in finding the defendant guilty." *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 28 (citing *People v. Howery,* 178 Ill. 2d 1, 34-35 (1997)).

¶ 50    In sum, we find the State proved beyond a reasonable doubt that defendant had control over the vehicle and knew the gun was present, and thus had constructive possession of it. Accordingly, we affirm defendant's conviction for unlawful possession of a weapon by a felon.

¶ 51    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 52    Affirmed.